WALLIS v. RHEA & ROSS.

1. A general and undefined objection should not be made to the admission of evidence; and if a party objects to the reading of a deposition, without particularizing the ground upon which it is made, the court may promptly overrule the objection.

2. A deed executed by the defendant in execution, to the claimant, is admissible, on the trial of the right of property against the plaintiff in execution, although it was not recorded within the time prescribed by law; but the effect of such deed will depend upon the fact whether it was recorded before the plaintiff's lien attached, or whether he had notice of its existence.

3. Where the jury find the property levied on, upon a trial of the right under the statute, subject to the execution, judgment should not be rendered against the claimant for its assessed value, where this exceeds the amount of the execution, and costs; but is not an error in this respect, a clerical misprision in the court below, or on error, at the costs of the party complaining?

Error to the County Court of Pickens.

THIS was a proceeding under the statute for the trial of the right of property. From a bill of exceptions sealed at the instance of the claimant, it appears, that a writ of *fieri facias* was issued from the circuit court of Morgan, on the 25th January, 1842, which on the 23d February following, was received by the sheriff of Pickens. The *fi. fa.* recites the recovery of a judgment by the defendants in error against James Wallis, for the sum of $133 92 debt, $12 63 damages, and

$13 31¼ costs, and commands that the same be made of the defendant therein.   A levy being made on a male slave nam-ed Miles, the plaintiff in error interposed a claim pursuant to the statute, and upon this claim an issue was framed, sub-mitting to the jury the question of the liability of the slave to satisfy the execution.

The questions arising upon the bill of exceptions, may be thus condensed.   1.  The plaintiff in execution offered in e-vidence the deposition of J. G. Clarke, and the claimant ob-jected to its admission, "because of various defects apparent from the notice, caption and body of said deposition."   This objection was overruled, and the deposition permitted to be read to the jury.   2.  Plaintiff then introduced B. F. Roper, late sheriff of Pickens, who testified that John G. Clarke was his deputy, and returned the *fieri facias* under which the property in question had been levied on.   The *fi. fa.* was as above recited, and indorsed thus : "Received, Feb. 23, 1842." "Levied upon one boy Miles, Feb. 28th, 1842."   To the admission of this as evidence, the claimant objected, but his objection was overruled.   3.  The claimant then offered a deed made by the defendant in execution on the 25th Decem-ber, 1841, by which he conveyed to the claimant, among o-ther slaves, &c. the one now in controversy, to secure and save harmless John M. K. A. Wallis, in consequence of his suretyship for the grantor in sundry instances, which are par-ticularly stated.   It was provided by the deed, that if the claimant failed to pay off, or satisfy the debts therein describ-ed, then the trustee was authorized to sell the property con-veyed, or such part thereof as might be necessary to extin-guish them.   This deed was deposited with the clerk of the county court of Pickens, on the 25th January, 1842, for registration, and recorded on the following day—its exe-cution, as well as the consideration expressed therein, were duly established ; notwithstanding, upon the objection of the plaintiff in execution, it was rejected by the court.

The jury returned a verdict for the plaintiffs in execution, by which they assessed the value of the slave in controversy at $700 ; and judgment was rendered, condemning him to the satisfaction of the execution, and adjudging if the slave was

not delivered as by the statute directed, the plaintiffs should recover of the claimant the sum of seven hundred dollars, with costs.

S. F. RICE for the plaintiff in error, insisted that the order to take the deposition of witness Clarke, required notice to be given to the defendant; consequently notice to the attorney was not sufficient. [Clay's Dig. 164, § 1.] The commission to take the deposition requires that it shall be executed between 8 o'clock, A. M. and 4 P. M., while the notice states that the deposition should be taken between 9 A. M. and 4 P. M. This variance, it is insisted, is fatal; especially as the claimant did not cross-examine.

The execution of the deed having been proved, the court should have admitted it to be read to the jury. [5 Ala. Rep. 531; 7 Id. 698.] The judgment is itself erroneous, in being rendered against the claimant for the assessed value of the slave. [Clay's Dig. 213, § 64.]

W. COCHRAN, for the defendant in error. The commission, and notice of the time and place of its execution were clearly regular; and if the judgment against the claimant is not in due form, this court will correct it.

The judgment sought to be enforced by condemning the slave, was obtatned long before the deed was executed, and the deed was not recorded until more than thirty days from its date—after the time for its registration as against creditors had expired. It was therefore properly excluded from the jury. [Clay's Dig. 255, § 5; 5 Ala. Rep. 324; 8 Ala. Rep. 866.]

COLLIER, C. J.—1. The generality of the objection to the reading of the deposition was such, that the circuit court might, with perfect propriety, have overruled it. Undefined objections should never be made to the admission of evidence; and it may be laid down generally, that if the party making them, will not particularize, the court is not bound to cast about for the grounds upon which, in the mind of counsel, they are rested, but may promptly disregard them. Justice itself, the dignity of judicial proceedings, and the cer-

tainty of the law, all impel to this conclusion. We may, however, add, that the objections stated by the counsel for the plaintiff in error, in his argument here, are not such as should have induced the rejection of the deposition.

The act of 1828, requires that " all deeds and conveyances of personal property in trust, to secure any debt or debts, shall be recorded in the office of the clerk of the county court of the county wherein the person making such deed or conveyence shall reside, within thirty days, or else the same shall be void against creditors and subsequent purchasers without notice." [Clay's Dig. 255, sec. 5.] Under this statute, it has been held, that the want of registration, within the time prescribed, would not render the deed inoperative against a creditor with notice, who had not acquired a lien on the property embraced by it. [Smith & Co. v. Zurcher, use, 9 Ala. Rep. 208 ; Daniel v. Sorrelle, and another, Id. 436.] The failure of the claimant to record his deed, did not make it *absolutely void*, but merely void " against creditors and subsequent purchasers without notice." There is nothing in the record to indicate that the plaintiffs in execution acquired a lien on the slave in question, previous to the execution of the deed. Their judgment was rendered in the circuit court of Morgan, and the *fi. fa.*, which was levied, appears to be an *alias* execution, yet we are not informed to what county its predecessor issued ; if to one in which the slave now in controversy was not to be found, it could not have operated a lien upon him. From this view, it results that the deed was admissible that the claimant might, if he could, have shown that the plaintiffs in execution were informed of the existence of the deed before the time prescribed for its registration. If he failed to prove a notice or an excuse for the failure to record the deed, if any other were available, it would, of course, be inoperative, and the duty of the court so to instruct the jury.

By the act of 1828, " the better to provide for the trial of the right of property, and for other purposes," it is made the duty of the jury, in all cases, when they shall find the property subject to the execution, to find the value of each article separately ; and if the claimant shall fail to deliver the same, or any part thereof when required by the sheriff, it

shall be the duty of the sheriff to go to the clerk and indorse such failure upon the bond returned by him: whereupon, the bond shall have the force of a judgment, and the clerk shall issue execution against the claimants, and his or their security as securities, for the value of the property not delivered, as assessed by the jury, with interest from the date of the verdict. [Clay's Dig. 213, sec. 64.] There can be no question but the judgment of condemnation against the claimant may be satisfied by the payment of the costs of the trial of the right of property, and the amount collected upon the execution under which the levy was made. If the judgment in favor of the plaintiffs for $700, in the event of the failure to return the property, makes it obligatory upon the claimant to pay that sum, though the execution against which the claim was interposed is not for more than one-fourth the amount, there can be no doubt but it is erroneous. Yet we incline to think that the error is a mere clerical misprision, amendable in the court below, on motion, and may be here corrected, at the costs of the plaintiff in error. But we need not decide the point, as upon the second question considered, the judgment is reversed, and the cause remanded.