TELFAIR STOCKTON, APPELLANT, vs. THE NATIONAL BANK OF JACKSONVILLE, APPELLEE.

1. In equity, as well as at law, a pleading is to be construed most strongly against the pleader thereof.

2. It is incumbent upon a complainant to allege in his bill every fact, clearly and definitely, that is necessary to entitle him to relief.

3. All the evidence offered in a case should correspond with the allegations in the pleadings and be confined to the issues.

4. No objection will be allowed to be taken in the appellate court to the admissibility of any testimony, oral or documentary, found in the record in a chancery cause, unless the record affirmatively shows that the objection thereto was presented to the chancellor, and expressly ruled upon by him in the court below at or before the final hearing of the cause.

5. Section 1972 of Revised Statutes, relating to the recording of conveyances, places creditors and subsequent purchasers upon the same footing as to prior unrecorded conveyances.

6. The lien of a judgment rendered in an action at law dates, as to property previously attached in such action, from the time of the record by the clerk of the Circuit Court in the lien book of a notice of the levy and a description of the property levied upon, in accordance with the provisions of section 1651 of Revised Statutes.

7. Where land in possession of a tenant is conveyed, the continued possession of the tenant, as tenant of the grantee, is not constructive notice of the unrecorded deed.

8. When the person in possession is other than the grantee, it is unnecessary that there should be a visible change which should indicate to others that there had been a sale, to have the effect of giving notice to a subsequent purchaser or attaching creditor. Therefore where one, who had been a tenant of the grantor before the giving of the unrecorded deed, attorned to the grantee at the time it was given, and remained in possession afterwards until after the attachment, such possession alone can not furnish notice of the conveyance or be held to put an attachment creditor upon inquiry.

This case was decided by Division B.

Appeal from the Circuit Court for Duval county.

*A. W. Cockrell & Son,* for Appellant;

*John E. Hartridge* and *M. C. Jordan,* for Appellee.

STATEMENT.

On the 21st day of June, 1898, the appellee, a corporation, filed its bill in chancery in the Circuit Court of Duval county against the appellant and Napoleon B. Broward as sheriff of the said county of Duval, alleging, in substance, therein as follows: That on the 9th day of August, 1897, appellee purchased from William H. Caulk and wife and Julia Dearing a certain lot in the city of Jacksonville, therein described, receiving a deed from said grantors on said date, under which appellee was given possession of and went into possession of said lot on said date and then and thereafter continued to occupy

the same through its tenant, William Starke; that, after having paid a part of the purchase price of said lot on said 9th day of August, and entered into possession thereof, appellee was led to believe that said deed was defective by reason of certain erasures and re-writing over said erasures, and for other informalities, and appellee was advised to require and obtain another deed from the grantors to said lot, free from erasures and re-writing; that, without giving up said original deed, appellee requested the grantors to execute another deed to said lot, which said grantors did by executing and delivering the same in the post-office on the 12th day of August, 1897, which was received and recorded by appellee on the 14th day of August, 1897, both of said deeds being attached as exhibits to the bill and made a part thereof; that on the 13th day of August, 1897, appellant instituted an action of attachment in the Circuit Court of the said county of Duval against the said William H. Caulk, one of the grantors in said deed, and then and there caused a writ of attachment to be issued and levied by the said sheriff of said county upon said lot as the property of said Caulk, although said lot at the date of the levy of said writ was the property of appellee by purchase as aforesaid, and appellee was in possession thereof by its tenant; that such proceedings were had by appellant in said action of attachment as resulted in a judgment being entered against the. said William H. Caulk in favor of appellant on the 2nd day of June, 1898, for the sum of $640.26, and upon which judgment an execution had been duly issued and levied by said sheriff on said lot, and that the same was being advertised for sale on the 4th day of July, 1898, and that the same would be sold on said date by said sheriff, unless he should be restrained from so doing by an order of the court; that, in the event of such sale, a cloud would be

cast upon appellee's title to said property, and the value thereof depreciated and appellee greatly damaged. The prayer of the bill was for an injunction and general relief. The answer of the defendants under oath was waived.

On the 22nd day of June, 1898, the appellant filed his answer to the bill, in which he positively denied all the material allegations in the bill and averred, among other things, that appellee and its chief officers knew prior to seeing the original deed from said grantors that appellant as agent of the owner sold said lot to one Edward F. Clark, for which appellant claimed compensation and which claim formed the basis of his judgment referred to in the bill of complaint; that appellee and its chief officers knew upon seeing said deed that appellant's name and his business as a real estate agent were printed upon the back of said deed, that said deed was drawn by appellant and that as so drawn by appellant it was executed in the State of Kentucky, that the names of the witnesses were subscribed thereto in the State of Kentucky, that the re-writing of the name of appellee over the name of the said Edward F. Clark in said deed was done by some other than, and without the knowledge of, appellant and long after said deed had been executed'; that said deed was in itself notice to appellee of the said sale and conveyance to said Clark and of the compensation due in that behalf to appellant; that, though appellee and its chief officers had an opportunity to tell appellant of its negotiations and acts in the matter, and it was their duty to do so in the premises, yet the said officers so worded their conversation with appellant then and there as to mislead appellant. Said answer was sworn to by appellant, and the same benefit was claimed therein as though a formal demurrer had been interposed to the bill.

37 S. C.

On the 27th day of June, 1898, the bill was dismissed as to the said sheriff, and on the same date the cause came on to be heard before the chancellor below upon the application of appellee for a temporary injunction, affidavits being also filed on behalf of appellee, and said chancellor on said date made an order to the effect that appellant, his agents, attorneys, servants and all other persons claiming to act, by or through him, or in his behalf, be enjoined and restrained from selling the lot in question and from attempting to enforce the said judgment of appellant until the further order of the court.

Appellee filed a replication to the answer of appellant, a special examiner was appointed to take testimony in said cause, before whom considerable testimony was taken by the respective parties and duly reported to the court, and on the 12th day of May, 1900, a final decree in said cause was entered by the chancellor below, in which the temporary injunction was made perpetual and the costs were adjudged against appellant. From this decree appellant entered an appeal to this court, assigning some six errors. However, in view of the conclusion reached by us, it becomes unnecessary to consider said several errors in detail. Upon some points there was quite a conflict in the testimony, but for reasons which will appear in the opinion it is unnecessary to set it forth. Sufficient will appear in the opinion to indicate the view which we take of it, and as will be seen, upon the point which we take of it, and, as will be seen, upon the point flict in the testimony.

SHACKLEFORD, J.    *(after stating the facts.)*

It is not alleged by appellee in its bill that either one of the deeds from Caulk, the owner of the lot in question, was filed for record prior to the 13th day of August, 1897, the date appellee instituted his action of attachment against the said Caulk and caused the writ of attachment to be levied on said lot.   Indeed, it appears upon the face of said bill that the first deed which was delivered to appellee on the 9th day of August, 1897, was considered by it as being defective and only part of the purchase price of said lot was paid and another deed was demanded of the grantors, appellee, however, retaining possession of said first or original deed.   The second deed was executed and acknowledged in Kentucky on the 12th day of August, 1897, and hence could not have been in Jackson ville, Florida, on said date, and it was not filed for record until the 14th day of August, 1897, the day after appellant had caused a writ of attachment to be levied on said lot.   It may be true that said deed was deposited in the post-office on the 12th day of August, 1897, though there is no evidence upon that point and neither is there any evidence that appellee or its officers were informed of the delivery or depositing of said deed in the post-office either by wire or otherwise.   However if said deed was delivered in the post-office on the 12th day of August it must have been at some post-office in the State of Kentucky.   There is some conflict in the testimony as to when the balance of the purchase price of said lot was paid by appellee, $25.00 having been paid by it on the 9th day of August, 1897.   but it would seem that the balance of said purchase price of $11,325.00 was paid by appellee on the 12th day of August, 1897.   However, there is no allegation in the bill that appellant had any notice or knowledge of the

execution of either of said deeds by said grantors to appellee or the payment of the purchase money by it or of any part thereof at the date of the levy of the said writ of attachment. Neither is there any evidence to the effect that appellant had no such knowledge or notice and the pubappellannt had no such knowledge or notice and the public records at the date of the issuance and levy of the said writ of attachment showed the title to said lot to stand in the name of said Caulk, appellant's lien must be held to be superior to the title of appellee, unless there had been such a visible change in the possession or occupancy of said lot, or other things done in connection therewith, as to charge appellant with notice or knowledge or at least to cast upon him the duty of making inquiry. The only allegation in the bill to this effect or which tends in that direction is that appellee went into possession of said lot on the 9th day of August, 1897, and then and thereafter occupied the same by one William Starke, its tenant, until appellee concluded to erect a valuable brick building thereon, which has since been erected. It will be noticed there is no allegation that appellant had any knowledge or notice of the change of the possession of said lot or of its occupancy by appellee through its tenant. The evidence discloses that said Starke was the tenant of said Caulk, one of the grantors in said deed, and had been in possession of said lot as the tenant of said Caulk for some months prior to the said 9th day of August, 1897, and that said Starke continued in the possession or occupancy of said lot for about a month or six weeks after said date and that on the 8th day of September, 1897, he paid appellee the sum of $60.00 for one month's rent of said property. The uncontradicted testimony of appellant is to the effect that he had a conversation with said Starke on the night of the 9th of August, 1897, concerning said property,

during which said Starke informed him that he was down
there at the Palcide Hotel to see said Caulk in regard to
making some little improvements on the property and re-
ducing the rent, and on that same night said Starke did
have a conversation with said Caulk; that on the next day,
the 10th of August, 1897, appellant had a conversation
with said Caulk; that also on the said 10th day of Au-
gust, 1897, appellant had a conversation with Bion H.
Barnett, the then cashier of appellee, concerning the sale
of said lot by appellant as a real estate agent to appellee,
and that in none of these conversations was anything said
to appellant concerning the fact of appellee's having pur-
chased said lot or having entered into the occupancy or
possession thereof.   Appellant further testified that dur-
ing said week or prior thereto he did not know of any
change in the tenancy of said lot.   It is true that the tes-
timony discloses the fact that William M. Bostwick, who
was collecting the rent from said Starke on said property
for the Penn Mutual Life Insurance Co., which said com-
pany had a mortgage thereon, informed said Starke on
the 9th of August, 1897, that said lot had been sold to ap-
pellee and that hereafter he would pay the rent to appel-
lee, and that either on the 9th or 10th of said month said
Bostwick introduced said Starke to said Bion H. Barnett.
There is no evidence whatever that appellant had any
knowledge of this fact.   Admitting that said Bostwick
had authority to deliver or change the possession of said
lot, which is doubtful, that the said Caulk himself told
the said Starke of the sale of said property and author-
ized him to pay the rent to appellee, of which there is no
testimony, and that said Starke then and there agreed to
pay rent to appellee and to recognize appellee as his land-
lord, of which there is no testimony, and that said Starke

did subsequently attorn to appellee, what effect has all this upon appellee's case?

It is well settled by this court that in equity as well as at law a pleading is to be construed most strongly against the pleader, and also that it is incumbent upon a complainant to allege in his bill every fact clearly and definitely that is necessary to entitle him to relief. Herrin v. Brown, 45 Fla. ...., 33 South. Rep. 522; Johnson v. McKinnon, 45 Fla. ...., 34 South Rep. 272. It is equally well settled that all the evidence offered in a case should correspond with the allegations, and be confined to the issues. Tate v. Pensacola, Gulf, Land & Development Co., 37 Fla. 439, 20 South. Rep. 542; Lyle v. Winn, 45 Fla. ...., 34 South. Rep. 158. It is also true that "no objection will be allowed to be taken in the appellate court to the admissibility or competency of any testimony, oral or documentary, found in the record as evidence in a chancery cause, unless the record affirmatively shows that the objection thereto was presented to the chancellor, and expressly ruled upon by him in the court below at or before the final hearing of the cause." Skinner v. Campbell, 45 Fla. ...., 33 South. Rep. 526.

Section 1972 of Revised Statutes, relating to the recording of conveyances, has been construed by this court to place creditors and subsequent purchasers upon the same footing. Rogers v. Munnerlyn, 36 Fla. 591, 18 South. Rep. 669.

Section 1651 of Revised Statutes provides that a levy of the writ of attachment upon real estate shall bind said real estate as against subsequent purchasers or creditors only from the time of the record by the clerk of the Circuit Court in the lien book of a notice of the levy and a description of the property levied upon. The record in this .

case discloses that such a notice as required by said statute was filed and recorded on the 13th day of August, 1897. In the case of McClellan v. Solomon, 23 Fla. 437, 2 South. Rep. 825, it was held that the lien of a judgment rendered in an action at law dates, as to property previously attached in such action, from the time of the levy of the writ of attachment.

What effect could the notice to the tenant, he being the same tenant of the grantors and no visible or actual charge having taken place in the occupancy or possession of said land, have upon the rights of appellant? In the case of Veasie v. Parker, 23 Maine, 170, it was held that "when the person in possession is other than the grantee, it is necessary that there should be a visible change which should indicate to others that there had been a sale, to have the effect of giving notice to a subsequent purchaser or attaching creditor. Therefore where one, who had been a tenant of the grantor before the giving of the unrecorded deed, attorned to the grantee at the time it was given, and remained in possession afterwards until after the attachment, such possession can not furnish notice of the conveyance."

As was said in Wahrenberger v. Waid, 8 Colo. App. 200, 45 Pac. Rep. 518, "the mere fact that tenants who were in possession of premises at the time a conveyance was executed thereafter pay rent to the grantee does not constitute such a change of possession as to impart notice of the vendee's rights to put an attachment creditor upon inquiry." The following cases will also prove instructive upon this point: King v. Paulk, 85 Ala. 186. 4 South. Rep. 825; Troy v. Walter Bros. 87 Ala. 233, 6 South. Rep. 54; Griffin v. Hall, 111 Ala. 601, 20 South. Rep. 485; Mathews v. Demerritt, 22 Maine, 312; McMecham v. Grif-

fing, 3 Pick. 149; Smith v. Yule, 31 Cal. 180; Bell v. Twight, 18 N. H. 159; Townsend v. Little, 109 U. S. 504, 3 Sup. Ct. Rep. 357; Flagg v. Mann, Fed. Cas. 4,847, S. C. 2 Sumn. 486.    Also see 4 Cyc. p. 640.

From what has been said, it follows that the decree appealed from must be reversed, and it is so ordered. and the cause remanded for such further proceedings as may be in consonance with equity practice and not inconsistent with this opinion; the appellee to pay the costs of this appeal.